## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ERNESTO EMILIO PEREZ,**

> **Plaintiff,**

**v.**                                    **CASE NO:**

**C.H. ROBINSON WORLDWIDE,**

> **Defendant.**

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ERNESTO EMILIO PEREZ, (hereinafter "Plaintiff" or "Mr. Perez"), by and through the undersigned counsel, hereby sues Defendant, C.H. ROBINSON WORLDWIDE (hereinafter "Defendant," "CHRW," or "Company") and alleges:

### INTRODUCTION

1.     The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on disability and race, and retaliation in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

("Title VII") and its implementing Regulations, and the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA").

2.    As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his disability and race, and retaliated against him in violation of his rights under the ADA, Title VII and the FCRA.

3.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.    Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a)

and the principles of pendent jurisdiction.

6.      This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

## PARTIES

8.      Plaintiff is ERNESTO EMILIO PEREZ, a 36-year-old Hispanic male who has been diagnosed with generalized anxiety disorder and major depressive episodes.

9.      Plaintiff is a member of a class protected against discrimination and retaliation based on his disability and race under the ADA, Title VII, and the FCRA.

10. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

11. At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADA, Title VII, and the FCRA.

12. The Defendant, C.H. ROBINSON WORLDWIDE, is a corporation with its principal headquarters located at 14701 Charlson Road, Suite 1600, Eden Prairie, MN 55347, and regularly conducted business in Florida through its Tampa office located at 1600 E 8th Ave #121, Tampa, FL 33605, Hillsborough County, Florida.

13. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Florida and Hillsborough County, Florida, employing over 15,246 employees in more than 230 offices worldwide as a third party logistics company providing freight contracting and brokerage, transportation logistics, and purchase/sale/sourcing of fresh produce.

14. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to the ADA, Title VII, and the FCRA.

15.    Accordingly, Defendant is liable under the ADA, Title VII, and the FCRA for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

16.    Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

17.    On December 11, 2024, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, disability discrimination, race discrimination, and retaliation.

18.    On August 22, 2025, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination (EEOC Charge No. 511-2025-00972) against Defendant.

19.    More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring his FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and

760.11(8), Florida Statutes.

20.    All conditions precedent to bringing this action have been performed or have occurred.

## <u>GENERAL ALLEGATIONS</u>

21.    Plaintiff has documented disabilities consisting of generalized anxiety disorder and major depressive episodes, for which he receives ongoing medical treatment including prescription medications Sertraline 200mg, Buspirone 20mg, Trazodone 100mg, and Ambien 5mg nightly.

22.    On November 12, 2014, Plaintiff began his employment with Defendant as an Operations Representative at Defendant's Tampa, Florida office.

23.    Throughout his employment with Defendant, Plaintiff consistently exceeded performance expectations and demonstrated exceptional work quality. Plaintiff averaged 114 touches per day, well above the company's 80-touch goal, and was repeatedly recognized as a top performer on his team.

24.    Over his ten-year tenure, Plaintiff progressed through various positions including Operations Representative, Account Coordinator, Operations Lead Account Coordinator, Operations Supervisor, and

ultimately Lead Operations Coordinator, a position he held from November 2022 through December 2024.

25.    Plaintiff's exemplary work contributions included creating the majority of the floral team's Standard Operating Procedures (SOPs), conducting multiple training sessions, receiving multiple employee of the month and year awards, and training dozens of volunteers at Defendant's Kansas City office. Plaintiff's process improvements led to documented savings of hundreds of thousands of dollars in claims for Defendant.

26.    Throughout his employment, team members and supervisors were aware of Plaintiff's anxiety disorder and depressive episodes. Plaintiff had never received any disciplinary actions, warnings, or negative performance reviews in over ten years of employment prior to working under supervisor Marissa Ostrander.

27.    In March 2023, Marissa Ostrander became Plaintiff's Operations Manager and supervisor, a position she held through December 2024.

28.    On September 26, 2023, Marissa Ostrander posted an operations coordinator role that included the Tampa location and advised the team to direct qualified candidates to apply for the position.

29.    Plaintiff inquired whether his wife, who is also Hispanic/Latina

and had a decade of experience with floral programs and vendors, could apply for the position. Ms. Ostrander responded that "a husband and wife can't work together, because when I become a supervisor we can't be on the same team."

30.    Instead of hiring Plaintiff's qualified wife, Ms. Ostrander gave the position to Shelby Frost, a white woman.

31.    On February 7, 2024, another operations coordinator opening became available, and Plaintiff again asked if his wife could apply since he was not in a supervisor position. Ms. Ostrander again stated that "a husband and wife cannot work on the same team."

32.    Ms. Ostrander instead gave this job to Dave Rader, a white man who was Shelby Frost's fiancé, despite his lack of knowledge regarding temperature-controlled produce or floral operations and his location in the Kansas City office working only in less-than-truckload (LTL) operations.

33.    On February 19, 2024, Plaintiff requested and was approved for a one-year remote work accommodation due to his medical conditions, with the accommodation period running from February 19, 2024 through February 19, 2025.

34.    On May 28, 2024, during a monthly team call, Ms. Ostrander

announced a supervisor role for delivered sales and floral operations located in Eden Prairie, Minnesota.

35.    Plaintiff called Ms. Ostrander with Natalie Shelby as a witness to inquire about applying for the supervisor position. Ms. Ostrander told Plaintiff the position was "only for Eden Prairie."

36.    Kate Sippel further advised Plaintiff that he would be disqualified from consideration because he was not located in Eden Prairie.

37.    On May 29, 2024, Plaintiff messaged General Manager Joshua Noonan requesting a meeting to discuss the supervisor role opportunity.

38.    On May 31, 2024, Plaintiff met with Mr. Noonan, during which Plaintiff received what he described as "very disrespectful and degrading" treatment. Mr. Noonan called Plaintiff "unprofessional, a clown, suicidal" and expressed reservations about Plaintiff taking on a higher role.

39.    On June 3, 2024, Plaintiff returned from paid time off, apologized to Mr. Noonan, and applied for the supervisor role.

40.    On June 7, 2024, Plaintiff participated in his first interview with Kate Sippel.

41.    On June 14, 2024, Plaintiff participated in his final interview with Ms. Ostrander, Mark Knapp, and Tisha Wells.

42.    Notably, Dominick Felicetti was removed from the interview panel, eliminating representation from the floral team despite the role being advertised as supervising "both delivered sales and floral solutions."

43.    On June 21, 2024, Plaintiff received feedback regarding his rejection for the supervisor position, including criticism of his organization and packet length.

44.    On June 27, 2024, Nick Collins, a white male with only three years of experience at Defendant and no experience working on the floral team, was promoted to the supervisor position instead of Plaintiff, despite Plaintiff's over nine years of logistics experience and extensive knowledge of floral operations.

45.    The same day as Mr. Collins' promotion, on June 27, 2024, Plaintiff requested medical leave due to the deterioration of his mental health conditions, which had been exacerbated by workplace stress and required his medication dosages to be doubled.

46.    On June 28, 2024, just one day after Plaintiff requested medical leave, Defendant issued Plaintiff a verbal warning. When questioned, Ms. Ostrander admitted she was supposed to give the warning the day before and admitted to not reviewing performance data before issuing the warning.

47.     On July 1, 2024, while Plaintiff was on approved medical leave, he received a performance review via his personal email containing negative feedback and areas for improvement.

48.     During July 2024, while still on medical leave, Plaintiff filed his first HR complaint against leadership regarding discriminatory treatment and retaliation, providing multiple emails, screenshots, and performance data to support his claims.

49.     After filing his first HR complaint, Plaintiff received the first negative performance review in his ten-year career with Defendant.

50.     Plaintiff was given the verbal warning by Natalie Shelby under direct orders from Ms. Ostrander. When Plaintiff presented data proving Ms. Ostrander's performance claims were inaccurate, Ms. Ostrander denied giving the warning entirely.

51.     From July through September 19, 2024, Plaintiff took his approved medical leave. During this time, his mental health conditions required him to begin taking additional medications, Trazodone and Ambien, which he had not needed before working under Ms. Ostrander's supervision.

52.     On September 20, 2024, Plaintiff returned from medical leave

and faced increased workload demands and continued scrutiny from management.

53.    Upon his return, Plaintiff was involuntarily reassigned from Natalie Shelby's supervision to Nick Collins' team without proper training or orientation.

54.    Throughout his employment under Ms. Ostrander's supervision, Plaintiff observed a pattern of preferential treatment given to white employees, while he and other employees of color were subjected to disparate treatment and denied opportunities.

55.    Ms. Ostrander hired five white employees during her tenure while consistently denying opportunities to Plaintiff and his wife, despite their superior qualifications and experience.

56.    In late November 2024, Plaintiff filed a second HR complaint documenting the ongoing discrimination and retaliation he continued to face.

57.    On December 6, 2024, approximately one week after HR concluded there was "no policy violation" regarding Plaintiff's complaints, Defendant terminated Plaintiff's employment.

58.    The termination occurred on the same day Plaintiff had a

scheduled meeting with a hiring manager for another position within the company for which he was qualified, and which Mr. Collins was aware of.

59.    Plaintiff was terminated by General Manager Joshua Noonan via Microsoft Teams call at noon, with the stated reason being "poor performance" and "unsatisfactory performance."

60.    When Plaintiff asked for specific examples of poor performance, he was told "no" and that "the conversation was over."

61.    Defendant cited "unfinished tasks, late arrival to meetings without prior notification, refusing to take ownership of delegated tasks, and not using foundational knowledge to complete Lead responsibilities" as reasons for termination, despite having no documented evidence of performance improvement plans or written warnings prior to termination.

62.    At the time of his termination, Plaintiff had access to team statistics showing he remained one of the highest performers on the team.

63.    Plaintiff had never been written up, given a formal warning, or placed on a performance improvement plan during his entire ten-year tenure with Defendant.

64.    Throughout Ms. Ostrander's supervision, Plaintiff was held to different performance standards than other employees, particularly Talisha

Walker, who Ms. Ostrander admitted was her "best friend."

65.     Performance data showed that Ms. Walker consistently performed under the required 80 touches per day and should have been terminated multiple times according to company standards, yet she received no verbal warnings or disciplinary action.

66.     During the same time period that Plaintiff was being scrutinized for minor details, he had completed more than double the amount of work compared to Ms. Walker, yet was the only one held accountable to minute details.

67.     Ms. Ostrander demonstrated favoritism toward Ms. Walker by stepping in when Ms. Walker's feelings were hurt, making people apologize to her, buying her lunch, or allowing her to go home early.

68.     Ms. Ostrander also showed preferential treatment to other white employees, including making any suggestion from Shelby Frost into a "new law" for the team and calling out Plaintiff for not following Shelby's processes even when his work was completed properly.

69.     Ms. Ostrander accessed Plaintiff's LinkedIn profile and confronted him about his "open to work" status, initially lying about viewing his profile before admitting to the intrusion.

70.    When Plaintiff made multiple written requests for help and training after his reassignment to Mr. Collins' team, both supervisors ignored his requests, setting him up for failure.

71.    Defendant required Plaintiff to work during his approved vacation time, forcing him to work from his hotel in Orlando during the Mother's Day rush despite giving one month's notice for Saturday off.

72.    Following his accommodation requests and HR complaints, Plaintiff experienced increased scrutiny, selective enforcement of policies, and retaliatory treatment designed to create a hostile work environment.

73.    As a direct result of the discriminatory and retaliatory treatment by Defendant, Plaintiff's mental health conditions significantly deteriorated, requiring his medication dosages to be doubled and necessitating additional medications including Trazodone and Ambien that he had never needed before working under Ms. Ostrander's supervision.

74.    The workplace stress and discrimination also led Plaintiff to develop substance abuse issues as a coping mechanism for the hostile work environment.

75.    Upon information and belief, Defendant replaced Plaintiff with a less qualified white woman following his termination.

76.    As a direct and proximate result of Defendant's unlawful discrimination and retaliation, Plaintiff has suffered significant financial losses including lost wages, benefits, bonuses, and future earning capacity.

77.    Plaintiff has also suffered and continues to suffer severe emotional distress, mental anguish, humiliation, embarrassment, and damage to his professional reputation.

78.    Defendant's actions were willful, wanton, malicious, and showed a reckless disregard for Plaintiff's federally and state-protected rights.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Discrimination based on Disability
### 42 U.S.C. §§ 12101-12213

79.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 78 of this Complaint as though fully set forth herein.

80.    Plaintiff is a 36-year-old Hispanic male who has been diagnosed with generalized anxiety disorder and major depressive episodes, for which he receives ongoing medical treatment.

81.    At all times material herein, Defendant employed Plaintiff and

Defendant was an "employer" within the meaning of the ADA.

82.    At all times material herein, Defendant employed, and continues to employ, one hundred (100) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. As such, at all times material herein, Defendant was and is an "employer" within the meaning of the ADA. 42 U.S.C. § 12101 et seq.

83.    Moreover, Defendant is a "person" within the meaning of the ADA, 42 U.S.C. § 12101 et seq.

84.    At all times material herein, Defendant employed Plaintiff.

85.    Defendant, as Plaintiff's employer, was obligated to guard against the discrimination of Plaintiff by his co-workers, supervisors, managers, and other persons and to protect Plaintiff from discrimination in the workplace.

86.    However, Plaintiff was subjected to discriminatory treatment at the hands of his superiors, as more particularly alleged hereinabove because of his disability.

87.    Following Plaintiff's request for reasonable accommodation in the form of remote work due to his medical conditions, Defendant subjected Plaintiff to increased scrutiny, disparate treatment, and ultimately

termination.

88.    Defendant failed to engage in the required interactive process regarding Plaintiff's accommodation needs and instead retaliated against him for requesting accommodations.

89.    On June 27, 2024, the same day Plaintiff requested medical leave due to deterioration of his mental health conditions caused by workplace stress, Defendant issued him a verbal warning without reviewing performance data.

90.    While Plaintiff was on approved medical leave, Defendant sent him a negative performance review via personal email, marking the first negative review in his ten-year career.

91.    Upon Plaintiff's return from medical leave, Defendant involuntarily reassigned him to a different supervisor without proper training, setting him up for failure.

92.    Defendant required Plaintiff to work during approved vacation time despite his accommodation needs and mental health condition.

93.    Plaintiff believed that his superiors' offensive acts materially altered the terms and conditions of his employment. Further, a reasonable person would have found that the offensive acts of Plaintiff's superiors

materially altered the terms and conditions of Plaintiff's employment.

94.    Plaintiff did not welcome the offensive acts and did not directly or indirectly invite or solicit them by his own acts or statements.

95.    At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, about the discrimination against Plaintiff, but did not take prompt remedial action.

96.    Defendant violated the ADA by subjecting Plaintiff to discrimination because of his disability by failing to provide reasonable accommodations, subjecting him to disparate treatment following his accommodation requests, and ultimately terminating his employment because of his disability.

97.    Further, Defendant failed to prevent and promptly correct workplace discrimination. Defendant's supervisors, managers, and Human Resources personnel who learned about the objectionable workplace conduct and discrimination failed to promptly take steps to correct this conduct.

98.    The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative

and remedial action to prevent the discrimination of Plaintiff, deprived him of statutory rights under the ADA.

99.   Defendant's actions constitute discrimination in violation of the ADA.

100.   As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of the ADA, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to his family and relationships, and other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, Plaintiff, ERNESTO EMILIO PEREZ, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, C.H. ROBINSON WORLDWIDE, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant has violated the ADA. 42 U.S.C. § 12101 et seq., as amended, and its implementing Regulations, discriminating against Plaintiff

based on his disability;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the discrimination to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of his injuries and damages caused by Defendant's discriminatory conduct and actions pursuant to the ADA;

D.    Award Plaintiff all other damages available under the ADA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the ADA, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Retaliation
### 42 U.S.C. §§ 12101-12213

101.  Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 78 of this Complaint as though fully set forth herein.

102.  Plaintiff is a 36-year-old Hispanic male who has been diagnosed with generalized anxiety disorder and major depressive episodes, for which he receives ongoing medical treatment.

103.  At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of the ADA.

104.  Moreover, Defendant is a "person" within the meaning of the ADA, 42 U.S.C. § 12101 et seq.

105.  At all times material herein, Defendant employed Plaintiff.

106.  Defendant subjected Plaintiff to adverse employment actions for

seeking accommodations and filing complaints about discriminatory treatment.

107.    On February 19, 2024, Plaintiff requested and was approved for a one-year remote work accommodation due to his medical conditions.

108.    On June 27, 2024, Plaintiff requested medical leave due to deterioration of his mental health conditions exacerbated by workplace stress.

109.    On June 28, 2024, just one day after Plaintiff's medical leave request, Defendant issued Plaintiff a verbal warning, admitting that the warning was supposed to be given the day before and that performance data had not been reviewed.

110.    During July 2024, while on approved medical leave, Plaintiff filed his first HR complaint against leadership regarding discriminatory treatment and retaliation.

111.    After filing his HR complaint, Plaintiff received the first negative performance review in his ten-year career with Defendant.

112.    In late November 2024, Plaintiff filed a second HR complaint documenting ongoing discrimination and retaliation.

113.    On December 6, 2024, approximately one week after HR

concluded there was "no policy violation" regarding Plaintiff's complaints, Defendant terminated Plaintiff's employment.

114.   The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful retaliation.

115.   As his employer, Defendant was obligated to guard against the retaliation of Plaintiff by his co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from retaliation in the workplace.

116.   Defendant violated ADA by, among other things, failing to promptly correct the retaliatory conduct toward Plaintiff once it learned of it.

117.   Plaintiff, by being subjected to this retaliation created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

118.   The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the retaliation of Plaintiff, deprived him of

statutory rights under the ADA.

119.    As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the ADA, according to proof.

**WHEREFORE**, the Plaintiff, ERNESTO EMILIO PEREZ, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, C.H. ROBINSON WORLDWIDE, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the ADA. 42 U.S.C. § 12101 et seq., as amended, and its implementing Regulations by retaliating against Plaintiff for seeking accommodations and filing complaints about discriminatory treatment;

B.    Award sufficient remedial relief to make Plaintiff whole for the

individual loss that he has suffered because of the retaliation to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation he has endured;

C.   Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of his injuries and damages caused by Defendant's retaliatory conduct and actions pursuant to the ADA;

D.   Award Plaintiff all other damages available under the ADA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the ADA, according to proof;

E.   Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.   Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem

equitable, just, and proper.

## COUNT III
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### Race Discrimination
### 42 U.S.C. § 2000e et seq.

120.   Plaintiff alleges, realleges, and incorporates by reference all

allegations set forth in each of the preceding Paragraphs 1 through 78 of this

Complaint as though fully set forth herein.

121.   Plaintiff is a 36-year-old Hispanic male.

122.   At all times material herein, Defendant employed Plaintiff and

Defendant was an "employer" within the meaning of Title VII.

123.   Moreover, Defendant is a "person" within the meaning of Title

VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person"

within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes

one or more individuals, governments, governmental agencies, political

subdivisions, labor unions, partnerships, associations, corporations, legal

representatives, mutual companies, joint-stock companies, trusts,

unincorporated organizations, trustees, trustees in cases under title 11, or

receivers." 42 U.S.C. § 2000e(a).

124.   At all times material herein, Defendant employed, and continues to employ, fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. As such, at all times material herein, Defendant was and is an "employer" within the meaning of Title VII.

125.  Plaintiff was subjected to race discrimination at the hands of Marissa Ostrander and other supervisors who consistently denied opportunities to Plaintiff and other Hispanic employees while providing preferential treatment to white employees.

126.  On September 26, 2023, when Plaintiff inquired whether his Hispanic wife could apply for an operations coordinator position, Ms. Ostrander stated that "a husband and wife can't work together" and instead gave the position to Shelby Frost, a white woman.

127.  On February 7, 2024, when another operations coordinator opening became available, Plaintiff again asked if his wife could apply. Ms. Ostrander again stated that "a husband and wife cannot work on the same team" and instead gave the job to Dave Rader, a white man who was Shelby Frost's fiancé, despite his lack of qualifications.

128.   Under Ms. Ostrander's supervision, Defendant hired five white

employees while consistently denying opportunities to Plaintiff and his Hispanic wife, despite their superior qualifications and experience.

129.   Nick Collins, a white male with only three years of experience at Defendant, was promoted to supervisor over Plaintiff, despite Plaintiff's over nine years of logistics experience and extensive knowledge of floral operations.

130.   Plaintiff observed a pattern of preferential treatment given to white employees, including Talisha Walker, Shelby Frost, and Dave Rader, while Hispanic employees were subjected to disparate treatment and denied opportunities.

131.   White employees received social benefits such as lunches purchased by management, while remote Hispanic employees like Plaintiff received no such benefits.

132.   Upon information and belief, Defendant replaced Plaintiff with a less qualified white woman following his termination.

133.   Defendant knew or should have known of the race discrimination suffered by Plaintiff.

134.   Defendant violated Title VII by failing to promptly correct the race discrimination experienced by Plaintiff.

135.   The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the race discrimination of Plaintiff, deprived him of statutory rights under Title VII.

136.   Defendant's actions constitute race discrimination in violation of Title VII.

137.   As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to his family and relationships, and other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, ERNESTO EMILIO PEREZ, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, C.H. ROBINSON WORLDWIDE, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.      Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, by discriminating against Plaintiff based on his race;

B.      Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the race discrimination to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.      Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's race discrimination pursuant to Title VII;

D.      Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.      Award Plaintiff pre- and post-judgment interest;

F.      Award Plaintiff his attorneys' fees, reasonable expert witness
        fees, and the costs of this action; and

G.      Grant such other and further relief as this Court may deem
        equitable, just, and proper.

## COUNT IV
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### Race Retaliation
### 42 U.S.C. § 2000e et seq.

138.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 78 of this Complaint as though fully set forth herein.

139.    Plaintiff is a 36-year-old Hispanic male.

140.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

141.    Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a).

142.    At all times material herein, Plaintiff engaged in protected activity under Title VII by opposing discriminatory practices and filing complaints about race discrimination.

143.   During July 2024, Plaintiff filed his first HR complaint against leadership regarding discriminatory treatment based on race and other protected characteristics.

144.   In late November 2024, Plaintiff filed a second HR complaint documenting ongoing discrimination and retaliation based on race.

145.   On December 11, 2024, Plaintiff filed a charge of discrimination with the EEOC alleging race discrimination and retaliation.

146.   Following Plaintiff's protected activities, Defendant subjected him to adverse employment actions including increased scrutiny, disparate treatment, negative performance reviews, and ultimately termination.

147.   After filing his first HR complaint, Plaintiff received the first negative performance review in his ten-year career with Defendant.

148.   Plaintiff was subjected to selective enforcement of policies and held to different standards than similarly situated white employees.

149.   On December 6, 2024, approximately one week after HR concluded there was "no policy violation" regarding Plaintiff's race discrimination complaints, Defendant terminated Plaintiff's employment in retaliation for his protected activities.

150.   The Defendant knew or should have known that Plaintiff was

exercising his rights under Title VII by opposing discriminatory practices.

151.   The Defendant violated Title VII and retaliated against Plaintiff by, among other things, subjecting him to increased scrutiny, disparate treatment, negative performance reviews, and termination following his complaints about race discrimination.

152.   The Defendant's actions constitute violations of Title VII's anti-retaliation provisions.

153.   As a direct and proximate result of Defendant's retaliatory and unlawful conduct, Plaintiff has suffered, continues to suffer, and will suffer damages including, but not limited to, lost wages, salary, employment benefits and other compensation lost by reason of Defendant's unlawful conduct in violation of Title VII.

**WHEREFORE**, the Plaintiff, ERNESTO EMILIO PEREZ, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, C.H. ROBINSON WORLDWIDE, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant violated Title VII and engaged in unlawful conduct and employment practices prohibited by Title VII in that Defendant

retaliated against Plaintiff for opposing discriminatory practices and filing complaints about race discrimination;

B.    Award damages to Plaintiff for lost wages, salary, employment benefits, and all other compensation denied or lost resulting from Defendant's unlawful conduct and employment practices in violation of Title VII, and to otherwise make him whole for any losses suffered because of such unlawful employment practices;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of his damages caused by Defendant's retaliatory conduct pursuant to Title VII;

D.    Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff his attorneys' fees, reasonable expert witness

fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT V
## VIOLATION OF FLORIDA CIVIL RIGHTS ACT
## FLORIDA STATUTES §§ 760.01-11
### Disability Discrimination

154.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 78 of this Complaint as though fully set forth herein.

155.   Plaintiff is a 36-year-old Hispanic male who has been diagnosed with generalized anxiety disorder and major depressive episodes, for which he receives ongoing medical treatment.

156.   At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

157.   Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any

other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

158.   At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

159.   Defendant, as Plaintiff's employer, was obligated to guard against the discrimination of Plaintiff by his co-workers, supervisors, managers, and other persons and to protect Plaintiff from discrimination in the workplace.

160.   However, Plaintiff was subjected to discrimination because of his disability through discriminatory treatment by Defendant and its employees, supervisors, managers, and other agents, who subjected him to disparate treatment following his accommodation requests and ultimately terminated him because of his disability.

161.   Following Plaintiff's request for reasonable accommodation in the form of remote work due to his medical conditions, Defendant subjected Plaintiff to increased scrutiny and disparate treatment.

162.   On June 27, 2024, the same day Plaintiff requested medical leave due to deterioration of his mental health conditions, Defendant issued him a verbal warning without reviewing performance data.

163.   While Plaintiff was on approved medical leave, Defendant sent him a negative performance review, marking the first negative review in his ten-year career.

164.   Plaintiff believed that Defendant's discriminatory behavior materially altered the terms and conditions of his employment. Further, a reasonable person would have found that Defendant's offensive acts and statements materially altered the terms and conditions of Plaintiff's employment.

165.   Plaintiff did not welcome the offensive statements, acts, and discriminatory treatment and did not directly or indirectly invite or solicit them by his own acts or statements.

166.   At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, the discrimination suffered by Plaintiff, but did not take prompt remedial action to eliminate the discriminatory behavior.

167.   Defendant violated the FCRA by subjecting Plaintiff to discrimination because of his disability and by failing to promptly correct it once it learned of it.

168.   Plaintiff, by being subjected to this discrimination created by

Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

169.   The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination of Plaintiff, deprived him of statutory rights under the FCRA.

170.   As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE**, the Plaintiff, ERNESTO EMILIO PEREZ, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, C.H. ROBINSON WORLDWIDE, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by discriminating against Plaintiff based on his disability;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of Defendant's discrimination against him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.    Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's discriminatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.    Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.    Award Plaintiff pre- and post-judgment interest;

F.    Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

<u>COUNT VI</u>
**VIOLATION OF FLORIDA CIVIL RIGHTS ACT**
**FLORIDA STATUTES §§ 760.01-11**
**Race Discrimination**

171.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 78 of this Complaint as though fully set forth herein.

172.    Plaintiff is a 36-year-old Hispanic male.

173.    At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

174.    Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes.

175.    At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

176.    Defendant, as Plaintiff's employer, was obligated to guard

against the discrimination of Plaintiff by his co-workers, supervisors, managers, and other persons and to protect Plaintiff from race discrimination in the workplace.

177.   However, Plaintiff was subjected to race discrimination through discriminatory treatment by Defendant and its employees, supervisors, managers, and other agents, who consistently denied opportunities to Plaintiff and other Hispanic employees while providing preferential treatment to white employees.

178.   Under Ms. Ostrander's supervision, Defendant hired five white employees while consistently denying opportunities to Plaintiff and his Hispanic wife, despite their superior qualifications and experience.

179.   When Plaintiff inquired about job opportunities for his qualified Hispanic wife, he was told that spouses could not work together, yet white employee Shelby Frost's fiancé Dave Rader was hired despite his lack of qualifications.

180.   Nick Collins, a white male with only three years of experience at Defendant, was promoted to supervisor over Plaintiff, despite Plaintiff's over nine years of logistics experience.

181.   Plaintiff observed a pattern of preferential treatment given to

white employees while Hispanic employees were subjected to disparate treatment and denied opportunities.

182. Plaintiff believed that Defendant's discriminatory behavior materially altered the terms and conditions of his employment. Further, a reasonable person would have found that Defendant's offensive acts and statements materially altered the terms and conditions of Plaintiff's employment.

183. Plaintiff did not welcome the offensive statements, acts, and discriminatory treatment and did not directly or indirectly invite or solicit them by his own acts or statements.

184. At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, the race discrimination suffered by Plaintiff, but did not take prompt remedial action to eliminate the discriminatory behavior.

185. Defendant violated the FCRA by subjecting Plaintiff to race discrimination and by failing to promptly correct it once it learned of it.

186. Plaintiff, by being subjected to this discrimination created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

187. The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the race discrimination of Plaintiff, deprived him of statutory rights under the FCRA.

188. As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE**, the Plaintiff, ERNESTO EMILIO PEREZ, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, C.H. ROBINSON WORLDWIDE, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by discriminating against Plaintiff based

on his race;

B.      Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of Defendant's race discrimination against him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.      Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's discriminatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.      Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.      Award Plaintiff pre- and post-judgment interest;

F.      Award Plaintiff his attorneys' fees, including litigation expenses,

and the costs of this action; and

G.    Grant such other and further relief as this Court may deem

equitable, just, and proper.

<u>COUNT VII</u>
**VIOLATION OF FLORIDA CIVIL RIGHTS ACT**
**FLORIDA STATUTES §§ 760.01-11**
**Retaliation**

189.   Plaintiff alleges, realleges, and incorporates by reference all

allegations set forth in each of the preceding Paragraphs 1 through 78 of this

Complaint as though fully set forth herein.

190.   Plaintiff is a 36-year-old Hispanic male who has been diagnosed

with generalized anxiety disorder and major depressive episodes.

191.   At all times material herein, Defendant employed Plaintiff and

Defendant was and is an "employer" within the meaning of the FCRA.

192.   Defendant is a "person" within the meaning of the FCRA, §

760.02(6), Florida Statutes.

193.   At all times material herein, Defendant was and is an "employer"

within the meaning of the FCRA. § 760.02(7), Florida Statutes.

194.   At all times material herein, Plaintiff engaged in protected

activity under the FCRA by opposing discriminatory practices and filing

complaints about disability and race discrimination.

195.    During July 2024, Plaintiff filed his first HR complaint against leadership regarding discriminatory treatment based on disability and race.

196.    In late November 2024, Plaintiff filed a second HR complaint documenting ongoing discrimination and retaliation based on disability and race.

197.    On December 11, 2024, Plaintiff filed a charge of discrimination with the EEOC and FCHR alleging disability discrimination, race discrimination, and retaliation.

198.    Following Plaintiff's protected activities, Defendant subjected him to adverse employment actions including increased scrutiny, disparate treatment, negative performance reviews, and ultimately termination.

199.    After filing his first HR complaint, Plaintiff received the first negative performance review in his ten-year career with Defendant.

200.    Plaintiff was subjected to selective enforcement of policies and held to different standards than similarly situated employees.

201.    On December 6, 2024, approximately one week after HR concluded there was "no policy violation" regarding Plaintiff's discrimination complaints, Defendant terminated Plaintiff's employment in

retaliation for his protected activities.

202.   The Defendant knew or should have known that Plaintiff was exercising his rights under the FCRA by opposing discriminatory practices.

203.   The Defendant violated the FCRA and retaliated against Plaintiff by, among other things, subjecting him to increased scrutiny, disparate treatment, negative performance reviews, and termination following his complaints about disability and race discrimination.

204.   The Defendant's actions constitute violations of the FCRA's anti-retaliation provisions.

205.   As a direct and proximate result of Defendant's retaliatory and unlawful conduct, Plaintiff has suffered, continues to suffer, and will suffer damages including, but not limited to, lost wages, salary, employment benefits and other compensation lost by reason of Defendant's unlawful conduct in violation of the FCRA.

206.   As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the

capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE**, the Plaintiff, ERNESTO EMILIO PEREZ, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, C.H. ROBINSON WORLDWIDE, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant violated the FCRA and engaged in unlawful conduct and employment practices prohibited by the FCRA in that Defendant retaliated against Plaintiff for opposing discriminatory practices and filing complaints about disability and race discrimination;

B. Award damages to Plaintiff for lost wages, salary, employment benefits, and all other compensation denied or lost resulting from Defendant's unlawful conduct and employment practices in violation of the FCRA, and to otherwise make him whole for any losses suffered because of such unlawful employment practices;

C. Award compensatory damages to Plaintiff in a sum that will

properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's retaliatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.    Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.    Award Plaintiff pre- and post-judgment interest;

F.    Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully requests a trial by jury.

Date this 5th day of September 2025.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033

**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com